Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021

*Attorney for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>   v.<br><br>MEDVIDI INC<br><br><br>                  Defendant. | Case No. 5:25-cv-03996-BLF<br><br><br><br><br>**DATE: OCTOBER 23, 2025**<br>**TIME: 9:00 A.M.**<br>**COURTROOM 1, FIFTH FLOOR**<br>**HON. BETH LABSON FREEMAN** |

### PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................1

BACKGROUND .......................................................................................................................2

STANDARD..............................................................................................................................3

ARGUMENT .............................................................................................................................3

I. The Language of the TCPA Applies to Text Messages ........................................................3

a. Section 227(c) Authorizes the FCC to Prohibit Unwanted "Telephone Solicitations,"

Including Text Messages ..........................................................................................................6

b. § 227(c)'s Private Right of Action Reaches Text-Message Violations ...........................8

c. Even If Ambiguous, the FCC's Longstanding Interpretation Controls ........................12

d. Defendant Invokes the Wrong Standard of Review ......................................................15

e. A Recent District Court in the Ninth Circuit Rejected Defendant's Position................20

II. Plaintiff Plausibly Alleges Medvidi Sent (or Caused to Be Sent) the Texts; Alternatively,

Leave to Amend Should Be Granted .......................................................................................23

CONCLUSION.........................................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

Abboud v. Circle K Stores Inc., 2025 U.S. Dist. LEXIS 13605 (D. Ariz. Jan. 27, 2025)..............5

Abramson v. Josco Energy USA, LLC, 2022 U.S. Dist. LEXIS 237792 (W.D. Pa. Aug. 1, 2022) ....................................................................................................................................................23

Ashland Hosp. Corp. v. Serv. Employees Int'l Union, 708 F.3d 737 (6th Cir. 2013)..................19

Baltimore Gas & Elec. Co. v. NRDC, 462 U.S. 87 (1983) ........................................................17

Bell v. New Jersey, 461 U.S. 773 (1983)...................................................................................15

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .......................................................................3

Bradshaw v. CHW Grp., Inc., 2025 U.S. Dist. LEXIS 13649 (D.N.J. Jan. 24, 2025) ..................5

Breda v. Cellco P'ship, 934 F.3d 1 (1st Cir. 2019).....................................................................5

Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016) ............................................................9, 21

Chennette v. Porch.com, 50 F.4th 1217 (9th Cir. 2022)..............................................................1

Citizens Telecomms. Co. of Minn., LLC v. FCC, 901 F.3d 991 (8th Cir. 2018).........................18

Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833 (1986) ........................................15

Davis v. CVS Pharmacy, Inc., 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025)........4, 9

Davis v. Safe Streets USA LLC, 497 F. Supp. 3d 47 (E.D.N.C. 2020)..........................................6

Dawson v. Porch.com, 2024 U.S. Dist. LEXIS 206363 (W.D. Wash. Nov. 13, 2024)...............5, 9

Drazen v. Pinto, 74 F.4th 1336 (11th Cir. 2023) .....................................................................4, 21

FCC v. Prometheus Radio Project, 592 U.S. 414 (2021) ...........................................................15

Forest Grove Sch. Dist. v. T.A., 557 U.S. 230 (2009)................................................................15

Gadelhak v. AT&T Servs., 950 F.3d 458 (7th Cir. 2020) ............................................................5

Gager v. Dell Fin. Servs., LLC, 727 F.3d 265 (3d Cir. 2013) .................................................5, 21

Grant v. Regal Auto. Grp., 2020 U.S. Dist. LEXIS 248347 (M.D. Fla. July 30, 2020)...............20

Hooters of Augusta, Inc. v. Am. Global Ins. Co., 272 F. Supp. 2d 1365 (S.D. Ga. 2003)............21

Hudson v. Palm Beach Tan, Inc., 2024 WL 4190513 (M.D.N.C. Aug. 12, 2024)........................21

Jones v. Blackstone Med. Servs., LLC, 2025 WL 2042764 (C.D. Ill. July 21, 2025) ............10, 18

Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365 (6th Cir. 2015)....................................4, 19

Krakauer v. Dish Network, L.L.C., 925 F.3d 643 (4th Cir. 2019) ................................................8

Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024) .......................................................12, 15

Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110 (11th Cir. 2014).............................16

Mantha v. Quotewizard.com, LLC, 347 F.R.D. 376 (D. Mass. 2024) ...........................................5

Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025 (9th Cir. 2008) .............................3

Matthews v. Mid City Cannabis Club, Inc., 2021 WL 1567496 (C.D. Cal. Mar. 2, 2021)............3

McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146 (2025) ..............2, 4, 16

Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368 (2012) ...............................................................21

Misner v. Empire Auto Protect, LLC, 2024 U.S. Dist. LEXIS 202146 (S.D. Ohio Nov. 6, 2024).5

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983)...............15, 18

New Prime Inc. v. Oliveira, 586 U.S. 105 (2019) .......................................................................10

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998) ..............................................7, 11

Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998)........................................................8

Perrin v. United States, 444 U.S. 37 (1979)................................................................................19

Red Lion Broad. Co. v. FCC, 395 U.S. 367 (1969)......................................................................15

Salazar v. Nat'l Basketball Ass'n, 118 F.4th 533 (2d Cir. 2024) ..................................................8

Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009) ...............................5–6, 9, 21

Schaevitz v. Braman Hyundai, Inc., 437 F. Supp. 3d 1237 (S.D. Fla. 2019) ..............................19

Seven Cty. Infrastructure Coal. v. Eagle Cty., 145 S. Ct. 1497 (2025) .......................................15

OPPOSITION TO MOTION TO DISMISS

Smith v. Am.-Amicable Life Ins. Co. of Tex., 2022 WL 1003762 (E.D. Pa. Apr. 4, 2022) ......... 23

U.S. Telecom Ass'n v. FCC, 825 F.3d 674 (D.C. Cir. 2016) ........................................................ 13

United States v. Paulson, 68 F.4th 528 (9th Cir. 2023) ................................................................ 11

Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037 (9th Cir. 2017) ............................... 4, 21

Williams v. Myler Disab., LLC, 2020 U.S. Dist. LEXIS 211914 (W.D.N.C. Nov. 12, 2020) ... 13–15

Wilson v. Skopos Fin., LLC, 2025 U.S. Dist. LEXIS 138638 (D. Or. July 21, 2025) ........ 5, 20–21

Zimmer Radio of Mid-Missouri, Inc. v. FCC, 145 F.4th 828 (8th Cir. 2025) .................. 15, 17–18

**Statutes**

47 U.S.C. § 227(a)(4) ............................................................................................................. 6–7, 9

47 U.S.C. § 227(b) ................................................................................................................ 10, 20

47 U.S.C. § 227(c) ................................................................................................ 1, 6–8, 13, 17

47 U.S.C. § 227(c)(1) ........................................................................................... 6–7, 13, 17

47 U.S.C. § 227(c)(3) ............................................................................................................... 13

47 U.S.C. § 227(c)(3)(F) ........................................................................................................... 1

47 U.S.C. § 227(c)(5) ................................................................................................................. 8

47 U.S.C. § 227(i)(1)(A) ......................................................................................................... 15

47 U.S.C. § 332 ....................................................................................................................... 13

**Regulations & Administrative Materials**

47 C.F.R. § 64.1200(c)(2) .......................................................................................................... 1

47 C.F.R. § 64.1200(d) ......................................................................................................... 5, 10

47 C.F.R. § 64.1200(d)(4) .......................................................................................................... 5

47 C.F.R. § 64.1200(e) ..................................................................................................... 1, 8, 11

In re Rules & Regs. Implementing the TCPA, 18 F.C.C. Rcd. 14014 (2003).................1, 9, 12, 21

In re Rules & Regs. Implementing the TCPA, 30 F.C.C. Rcd. 7961 (2015)..........................20–21

Targeting & Eliminating Unlawful Text Messages, 38 F.C.C. Rcd. 12247 (2023) ............1, 11, 14

Targeting & Eliminating Unlawful Text Messages, 88 Fed. Reg. 20800 (2023)........................11

Targeting & Eliminating Unlawful Text Messages, 89 Fed. Reg. 5098 (Jan. 26, 2024)..............21

Pallone-Thune TRACED Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019) ........................14–15

**Other Authorities**

Black's Law Dictionary (6th ed. 1990)..........................................................................................6

Webster's College Dictionary (1991) ............................................................................................7

Oxford English Dictionary (2d ed. 1989) ......................................................................................8

Oxford American Dictionary (1980) ..............................................................................................7

The New Merriam-Webster Dictionary (1989) ..............................................................................8

OPPOSITION TO MOTION TO DISMISS

# INTRODUCTION

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003); *Chennette v. Porch.com*, 50 F.4th 1217, 1223 (9th Cir. 2022).[1] The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5 (S.D.N.Y. 2024). Plaintiff Chet Michael Wilson is one of them. So when Defendant Medvidi Inc sent him telemarketing texts in willful violation of the FCC's rules even though he previously asked them to stop, he brought this lawsuit to vindicate those rights and put a stop to Medvidi's unwelcome and intrusive marketing practices.

---

[1] Business cell phones aren't eligible. *See Chennette*, 50 F.4th at 1223–26. But Mr. Wilson has alleged that the cell phone number he listed was for personal use, and Defendant doesn't dispute that.

Medvidi has now filed a Motion to Dismiss, and it's one that makes a big ask of this court. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So Medvidi therefore asks this court to reject the FCC's longstanding interpretations and hold that the Do Not Call List protects only voice calls, upending protections for potentially hundreds of millions of Americans who receive unwanted and non-consensual text messages.

This court should decline that request. A fresh read of the statutory text confirms that cell phone subscribers are eligible for the Do Not Call List, and that listing their number protects them from intrusive text messages, not just voice calls. Medvidi asks this Court to substitute its judgment for Congress's and the FCC's largely because in 1991 text messages didn't exist yet. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used. And even if the statute itself weren't clear on this, later enactments and multiple express delegations of discretion to the FCC show that Congress would have intended the FCC's consistent and well-reasoned judgment to win out. Also, the Plaintiff plainly alleges that the Defendant sent the texts at issue.

As such, the motion should be denied.

## **BACKGROUND**

Plaintiff Chet Michael Wilson brings this action under the TCPA arising from a series of unsolicited telemarketing text messages that advertised and promoted the services of Defendant Medvidi, Inc. Plaintiff had registered his telephone number on the National Do Not Call Registry more than thirty days before receiving the challenged messages, and he never consented to receive solicitations from Medvidi. *See* ECF No. 1 ("Complaint") at ¶¶ 16–19.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nevertheless, Plaintiff received multiple telemarketing text messages in 2022 and again in 2024 that were sent by Medvidi. These text messages identified Medvidi by name, contained links to Medvidi's website, and were plainly designed to promote Medvidi's telehealth services. (Compl. ¶¶ 20–22). Plaintiff responded "STOP" to the 2022 messages, and the acknowledgment confirmed that the opt-out request was received. Yet additional Medvidi marketing texts were sent to Plaintiff in 2024, disregarding his opt-out. (Compl. ¶ 22).

Plaintiff alleges that Medvidi initiated these text solicitations in violation of the TCPA's national do-not-call provisions. (Compl. ¶¶ 37, 41). These allegations are consistent with Plaintiff's experience that the messages were not stray communications intended for another recipient, but branded solicitations sent to his number to promote Medvidi's goods and services.

## STANDARD

"The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing a Rule 12(b)(6) motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## ARGUMENT

### I.    The Language of the TCPA applies to Text Messages

Defendant contends that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages. The Supreme Court, every

Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006 (2025), disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".)[2]; *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025)("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made 'using any automatic telephone dialing system or an artificial or prerecorded voice'—*i.e.*, the calls and texts that the TCPA regulates….We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages.")(citing *See In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. 14014, 14115 (2003)); *Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("The prohibition against auto dialed calls applies to text message calls as well as voice calls."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir.

---

[2] Defendant will likely rely on the recent order in *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025); one of two cases that refused to apply the above cited longstanding precedent. Contrary to what the court held in *Davis*, the Supreme Court's holding in *Campbell-Ewald* is not mere dicta. "The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez* [.]" *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). Indeed, "it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Id*. at 199. "Furthermore, in the most recent term Justice Kavanaugh's plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard." *Id*. (citing *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S.Ct. 2335, 2344 n.1, 207 L. Ed. 2d 784 (2020)). "The First, Second, Seventh, Ninth, and Eleventh Circuits have either adopted Judge Ginsburg's remark as black letter law rather than dicta or had already held that the TCPA included text messages before *Campbell-Ewald*." *Id*. at *6 (collecting cases).

2017); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to other forms of communications, such as text messages."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes."); *see also, e.g., Dawson v. Porch.com*, No. 2:20-cv-00604-RSL, 2024 U.S. Dist. LEXIS 206363, at *14 (W.D. Wash. Nov. 13, 2024) ("The Court agrees with this analysis regardless whether deference to the agency's interpretation is appropriate or not.") (citations omitted); *Ragsdale v. Leadpoint, Inc.*, No. 2:24-cv-04542-MCS-SK, 2024 U.S. Dist. LEXIS 202327 (C.D. Cal. Nov. 5, 2024) ("Defendant calls for the Court 'to independently determine whether 47 C.F.R. § 64.1200(d)(4) applies to text messages.'….The Court puts Defendant's call on hold."); *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638, at *12 (D. Or. July 21, 2025) ("Defendant's argument that the FCC lacks authority to do so is undermined by the statutory structure of the TCPA, which explicitly delegates such authority, as well as the vast applicable case law which abides by the FCC's regulations and guidance."); *Mantha v. Quotewizard.Com,* LLC, 347 F.R.D. 376, 387 (D. Mass. 2024) ("the texts from [defendant] amounted to 'telephone solicitations' within the meaning of the TCPA."); *Misner v. Empire Auto Protect, LLC,* No. 2:24-cv-1282, 2024 U.S. Dist. LEXIS 202146, at *7, 12 (S.D. Ohio Nov. 6, 2024) (receipt of unsolicited text messages supports a private right of action under Section 227(c)); *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 U.S. Dist. LEXIS 13605, at *12, 17 (D. Ariz. Jan. 27, 2025) (same); *Bradshaw v. CHW Grp., Inc.,* No. 24-cv-00114 (MEF)(JBC), 2025 U.S. Dist. LEXIS 13649 (D.N.J. Jan. 24, 2025) (same); *Stamper v. Manus-Northwestern Oral Health Ctr., Ltd.*, No. 23 C 05660, 2025 U.S. Dist. LEXIS 138094, at n.1 (N.D. Ill. July 17, 2025) (citing *Hudson v. Ralph*

*Lauren Corp.*, 385 F. Supp. 3d 639, 646 (N.D. Ill. May 1, 2019) (noting that the TCPA applies to both "voice calls and text calls to wireless numbers")); *Davis v. Safe Streets USA LLC*, 497 F. Supp. 3d 47, 54 (E.D.N.C. 2020) (holding that a single text message does constitute a concrete injury to support Article III standing for a TCPA claim).

Medvidi contends that because the private right of action provision uses the word "call," and because the Do Not Call List provisions do not use the specific terms "text message" or "SMS message," Congress did not intend for the Do Not Call List protections to cover text messages. Medvidi gets the statute wrong. The Do Not Call List provisions authorize the FCC to regulate "telephone solicitations," a defined term that plainly includes text messages. *See* 47 U.S.C. § 227(a)(4), (c)(1), (c)(3)(F). And the private right of action has the same scope as those other provisions.

### a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses text messages. *See infra*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That interpretation follows from "the ordinary, contemporary, common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" alone weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed *all* sorts of communication, both spoken *and* written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no

matter the mode and no matter how sent, from one person to another").[3] More generally, the definition of "telephone solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025). So Congress presumably referred to "call or message" disjunctively to broadly capture a wide range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025).

To be sure, as Medvidi emphasizes, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call or message." 47 U.S.C. § 227(a)(4). It is the meaning of those terms that governs, not the specific facts or technology that Congress would have had in mind in 1991. *See Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665. "The fact that a statute can be applied in situations not

---

[3] *See also, e.g.*, Webster's College Dictionary (1991) ("a communication delivered in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed. (1989) ("a communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another"); Oxford American Dictionary (1980) ("a spoken or written communication").

expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth."

*Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024) (quoting *Pennsylvania*

*Department of Corrections v. Yeskey*, 524 U.S. 206, 212, (1998)).

> **b.   *Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.***

Section 227(c)(5)'s grants a private right of action to enforce the Do Not Call List

regulations to any "person who has received more than one telephone call within any 12-month

period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward

provision designed to achieve a straightforward result"—to enable "each person to protect his

own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th

Cir. 2019).

 Medvidi can't dispute that text messages can be sent "in violation of the regulations." 47

U.S.C. § 227(c)(5). The FCC's regulations explicitly say so. *See* 47 C.F.R. § 64.1200(e).

Medvidi nevertheless contends that Congress's use of the word "call" in § 227(c)(5) limits

private judicial remedies exclusively to *voice* calls that violate the regulations. That's incorrect.

It is well established that the word "call" in the TCPA includes text messages. As the

Ninth Circuit has explained, the "ordinary, contemporary, common meaning" of the word "call"

is simply "to communicate or try to get into communication with a person by a telephone."

*Satterfield*, 569 F.3d at 953–54 & n.3 (quoting Webster's Third New International Dictionary

318 (2002)).[4] Accordingly, the FCC has recognized since 2003 that when the statute says "call,"

---

[4] *See also, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); The New Merriam-Webster Dictionary (1989) ("to get or try to get in communication with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

it means not just to traditional voice calls but also modern text messages. 18 F.C.C. Rcd. at 14115 ¶ 165 (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers"). And courts have repeatedly reached the same conclusion. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (holding "that a text message is a 'call' within the TCPA"); *Dawson v. Porch.com*, 2024 WL 4765159, at *4 (W.D. Wa. Nov. 13, 2024) (collecting cases).

That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.[5]

---

[5] Because § 227(c)(1)(D) confirms that the slight variation between Congress's use of a "call or message" in § 227(a)(4)'s capacious definition and its use of "call" in § 227(c)(5) is immaterial, the one district court that recently relied on this distinction to adopt a restrictive interpretation of § 227(c)(5) is unpersuasive. *See Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

Similarly, § 227(b)(1)(A), an autodialer provision, uses the word "call" several times to describe a prohibited transmission to both a "cellular telephone" and "a paging service." A typical paging device in the early 1990s would have displayed an incoming message as written text, usually a phone number to call.[6] So those uses of the word "call" must have encompassed both voice and text transmissions, too.

Medvidi heavily relies on *Jones v. Blackstone Medical Services, LLC*, No. 1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025) including claiming Blackstone is the Defendant here. *See* ECF No. 14 at *7 ("The other of those regulations, 47 C.F.R. § 64.1200(d)—and the only other regulation under which Plaintiffs sue Blackstone for violation of the TCPA"). But *Jones* is unpersuasive. There, the court held that a text message could not be a "call" for purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not an available technology in 1991," and "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* at *4. But that gets statutory interpretation wrong in two important ways. First, as the Supreme Court has warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). When there's a mismatch, the contemporary meaning of the text is what controls, not present-day usage. *See id. Jones* and other cases go astray when they reflexively apply present-day intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[7] And second, as explained above, it's irrelevant

---

[6] *See, e.g.*, **Paging Network, Inc., Annual Report, at 8 (1993)**, available at https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number to the subscriber").

[7] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of communication in 1991).

that Congress didn't have text messages specifically in mind in 1991. *See supra* (citing *Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665; *Salazar*, 118 F.4th at 550; *Yeskey*, 524 U.S. at 212). "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

 *Jones* also disregarded the FCC's longstanding interpretation of "call" to include text messages because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall prohibitions, or in associated definitional provisions.[8] That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re: Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question, and neither *Jones* nor Medvidi identifies any. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin

---

[8] *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a) (using "call" or "calls" in the original text of 47 U.S.C. §§ 227(a)(1), 227(a)(3), 227(b)(1)(A), 227(b)(1)(B), 227(b)(2)(A), 227(b)(2)(B), 227(c)(1)(D), 227(c)(5), 227(d)(1)(A), 227(d)(3)).

- 11 -

§ 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

### c. Even if the statute left room to doubt that a text message can be an actionable violation of the Do Not Call List provisions (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day.

Since 2003, the FCC held that text messages constitute calls within the meaning of the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (the "2003 Order"). In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954.

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id.* at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within those outer bounds. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

This case falls at the intersection of *two* such express delegations. Mainly, § 227(c) itself is an express delegation of rulemaking discretion to the FCC: Congress tasked the FCC with evaluating alternative approaches based on (among other things) their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C.

§ 227(c)(1)(A). It then told the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphases added). That language grants discretionary authority to "fill up the details," accompanied by "flexibility" to determine what rules will best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395.  In addition, Congress in 1993 tasked the FCC with deciding whether cell phone companies are "common carriers" whose subscribers therefore have rights under the TCPA. *Compare* 47 U.S.C. § 332(a)(1)(A), *with* 47 U.S.C. § 227(c)(3). That expressly delegates to the FCC "authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 395. If Congress didn't speak on this issue, then it clearly looked to the FCC's expert judgment to supply an answer. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (express delegation was evidence that Congress expected telecommunications technology "to evolve and therefore charged the [FCC] with the continuing obligation to define it").

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*.  *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Wilson*, 2025 WL 1784815, at *5; *Lirones*, 2024 WL 4198134, at *7; *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). This court should do the same.

As previously explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. *See supra*. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] …

enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its longstanding determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm that "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

In any event, the FCC's interpretation is, at the very least, an "informed judgment" that should be accorded "great weight" by this court. *Loper Bright*, 603 U.S. at 388; *see Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944). The FCC's position is grounded in the agency's specialized expertise, consistent across decades, and well-reasoned. So, it has all the hallmarks of an agency decision with "the power to persuade." *Loper Bright*, 603 U.S. at 388.

"In addition to the Supreme Court and the FCC, **Congress** has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) (emphasis added) (citing *Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in §227(b) in providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). Specifically, when Congress amended the TCPA in 2019 with the Telephone Robocall Abuse Criminal Enforcement and Deterrence Act (the "TRACED Act"), it adopted the FCC's interpretation, instructing the FCC to prescribe regulations

related to "a call made or *a text message* sent in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380-81 (1969); citing *Bell v. New Jersey*, 461 U.S. 773, 785, and n.12 (1983)). When Congress amended the TCPA in 2019, not only was it aware that the FCC and every court had interpreted the statute to cover text messages, it *ratified* that interpretation with an explicit reference to text messages in the amendment. Because Congress has spoken directly on the issue, the application of the TCPA to text messages is all but conclusive and reason alone to reject Defendant's position.

### d.   Furthermore, the Defendant's argument asks this Court to apply the Incorrect Standard of Review to the FCC's Exercise of Discretion.

Contrary to Defendant's contention, "when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard. ***Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained***." *Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497 (2025) (emphasis added) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-392) (citing *Motor Vehicle Mfrs. Ass'n of United States, Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U. S. 29, 43 (1983); *FCC* v. *Prometheus Radio Project*, 592 U. S. 414, 423 (2021) ("A court simply ensures

1    that the agency has acted within a zone of reasonableness and, in particular, has reasonably

2    considered the relevant issues and reasonably explained the decision.") (emphasis added); *see also*

3    *Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("We consider a

4    challenge to the agency's decision making under the APA's arbitrary-and-capricious standard next.

5    But because Congress granted the FCC discretion to interpret Section 202(h) within the public

6    interest, we decline to grant the petition on the basis that the FCC's definition of 'competition' is

7    inconsistent with Section 202(h).").

8

9        Under the correct standard of review, it cannot be said that the FCC, under its grant of

10    authority from Congress, acted unreasonably or inconsistent with the statute when it extended the

11    TCPA's protections, including the Do-Not-Call Provision, to text messages. In fact, ***Congress***

12    ***adopted the FCC's interpretation*** when it recently amended the TCPA. *See Williams v. Myler*

13    *Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C.

14    Nov. 12, 2020) ("In addition to the Supreme Court and the FCC, ***Congress*** has also made clear the

15    TCPA's applicability to text messages.") (citing *Pallone-Thune Telephone Robocall Abuse*

16    *Criminal Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat 3274. The

17    Supreme Court and every Circuit Court also agree that the TCPA covers text messages.

18

19        In *Davis*, the court applied the wrong standard of review, relying instead on *McLaughin*

20    *Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). *See* 2025 U.S. Dist. LEXIS

21    167366, at *9 (N.D. Fla. Aug. 26, 2025). The applicable standard is not "appropriate respect" as

22    the *Davis* court held, but instead an inquiry into whether the FCC acted reasonably and reasonably

23    explained its exercise of discretion. Such is the case here because Congress instructed the FCC to

24    "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers'

privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S. Code § 227(c)(1) (titled "Protection of Subscriber Privacy Rights").

Indeed, "Congress vested the FCC with considerable authority to implement the Telephone Act." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010). In furtherance of that goal, Congress directed the FCC to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E); *see also Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F. 3d 1110, 1123 (11th Cir. 2014) ("Moreover, ***Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA***.")(emphasis added). Because the FCC exercised its discretion granted by the statute, the Administrative Procedure Act's deferential arbitrary-and-capricious standard. To be sure, "[t]he scope of this review 'is narrow,' and [we] must exercise appropriate deference to [the FCC's] decisionmaking and not substitute [our] own judgment for that of the [Commission]." *Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) (quoting *FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898, 917 (2025).

Under this standard, it cannot be said that the FCC's action was unreasonable or not reasonably explained. In the 2023 Order, the FCC explained its reasoning for clarifying and codifying the DNC protections to cover text message solicitations:

> Consumers increasingly rely on text messaging to stay in touch with friends and family, to do business, communicate with their child's school, and get information from their government. On many devices, people immediately see some or all of the messages once received on the device, whereas they have the option to ignore unwanted calls. This causes consumers to open their texts quickly because texts are an expected trusted source of communications, not annoyance and scams. The rise of junk texts jeopardizes consumer trust in text messaging. The increase of unwanted and illegal texts also frustrate consumers, and scam texts can cause serious harm.

> Scam texts can contain links to phishing campaigns and load malware onto unsuspecting consumers' phones, leading to fraud and other harms. The Federal Trade Commission (FTC) reports that text messaging scams cost consumers $86 million in 2020 and $326 million in 2022.4 Other estimates show higher losses, e.g., over $20 billion in 2022.

*Id.* at ¶1. Accordingly, "the Commission has considered the relevant factors and articulated a rational connection between the facts found and the choice made." *See Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983).

In fact, in *Jones v. Blackstone Med. Servs., LLC*, which Defendant cites to support its motion, the court found "[t]he Plaintiffs' position — that text messages are calls as the latter term is used in the TCPA — ***is an eminently reasonable one***, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." No. 1:24-cv-01074-JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *14 (C.D. Ill. July 21, 2025) (emphasis supplied). Defendant too concedes that for at least one section of the statute, it is not unreasonable to include texts as calls. *See* Mot. at 6.

Had the court in that case applied the correct standard of review to the FCC's action, it should have followed the FCC's interpretation because nothing about it is arbitrary and capricious. *See Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("An agency action may be arbitrary and capricious in many ways: by (1) 'rel[ying] on factors which Congress has not intended it to consider,' (2) 'entirely fail[ing] to consider an important aspect of the problem,' (3) 'offer[ing] an explanation for its decision that runs counter to the evidence before the agency,' or (4) offering an explanation that 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" (quoting *Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1000 (8th Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Even under the standard Defendant advances, this Court should "afford[] appropriate respect to the agency's interpretation." *Loper Bright*, 603 U.S. at 402). As *Loper Bright* explains, a court may even apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Id.* Because, as discussed above, Congress empowered the FCC to decide how to apply a statutory term to specific facts, the FCC's interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. This court should therefore, respectfully, "unhesitatingly afford deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015).

Moreover, despite what Defendant argues, the FCC's interpretation of a text message being a call is not at odds with the statute. Because the TCPA does not define the term "call", courts interpret the word "according to its 'ordinary, contemporary, common meaning.'" *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). "[T]he dictionary definition of 'call' [i]s 'to communicate with or try to get into communication with a person by a telephone.'" *Id.* (quoting *Satterfield*, 569 F.3d at 953-54) (quoting Webster's Third New International Dictionary (2002))). "Other courts have adopted this definition in the TCPA context." *Id.* (citing *Ashland Hosp. Corp. v. Serv. Employees Int'l Union Dist. 119 WV/KY/DH*, 708 F.3d 737, 742 (6th Cir. 2013); *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 U.S. Dist. LEXIS 112780, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010)).

The transmission of a text message to a consumer's telephone falls squarely within the definition of the word "call" as the purpose is to communicate with the person via their telephone. *See Satterfield*, 569 F.3d at 954 ("It is undisputed that text messaging is a form of communication

used primarily between telephones."). Moreover, "[b]oth the FCC and the courts have recognized that the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves, *e.g.*, with the advent of text messages and email-to-text messages." *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018). Indeed, in a 2015 ruling, the FCC stated, "[t]he TCPA's text and legislative history reveal Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as *new technologies emerge*." *Id*. (quoting *FCC 2015 Ruling*, 30 F.C.C. Rcd. 7961, 2015 FCC LEXIS 1586, at ¶¶ 113-15 (2015) (emphasis added)).

Application of these principles can be seen in district court's unanimous conclusion that "ringless" voicemail technology is a "call" covered under the TCPA even though the technology did not exist when the TCPA was enacted because the purpose – like text messages – is to communicate with a consumer via their telephone. Courts routinely apply the TCPA to evolving modalities that function as "calls," including ringless voicemail, because the statute protects the privacy interest regardless of transmission path. *See, e.g., Grant v. Regal Auto. Grp.,* 2020 U.S. Dist. LEXIS 248347, at *11 (M.D. Fla. July 30, 2020) (collecting cases). That same principle easily encompasses texts in §227(c)'s DNC context.

> **e.    *The only Ninth Circuit Court to Address this Issue Following McClaughlin claimed that the Argument "Cannot be Argued in Good Faith".***

Not surprisingly given the weight of this authority, there is a single case from the Ninth Circuit that has addressed this argument, and it forcefully rejected the Defendant's position. The Court in *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638, *10-13 (D. Or. July 21, 2025) denied an identical motion to dismiss holding:

> The TCPA generally targets two types of unsolicited phone calls: those made using automatic dialers, 47 U.S.C. § 227(b), and those made in contravention of do-not-call registries, 42 U.S.C. § 227(c). For both, Congress explicitly conferred on the

FCC the authority to promulgate implementing regulations. *See* §§ 227(b)(2), 227(c)(1)-(4). Through those regulations, the FCC has expanded the TCPA to apply to text messages. First, § 227(b)'s protections against automatic dialers were clarified as applying to both telephone calls and text messages issued without the recipient's consent. *See 2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14115 ("We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. [*11] . . . This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls . . . . Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls."); *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 ¶ 107, 2015 FCC LEXIS 1586 (July 10, 2015) ("Glide raises the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls. We reiterate that they are."); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("a text message is a 'call' within the meaning of the TCPA"); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."). Recently, the FCC clarified "that text messages are included in the TCPA prohibitions and the private right of action in § 227(c)(5)." *See Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, 2024 WL 4190513, at *8 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, No. 1:23-CV-486, 2024 U.S. Dist. LEXIS 164763, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024). Indeed, in 2024, the FCC explained: "The Commission adopts the proposal to codify the National DNC Registry's existing protections to text messages. Texters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry." *Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, 89 Fed. Reg. 5098, 5101, 5099 (Jan. 26, 2024). Defendant's argument that the FCC lacks authority to do so is undermined by the statutory structure of the [*12] TCPA, which explicitly delegates such authority, as well as the vast applicable case law which abides by the FCC's regulations and guidance.

Moreover, the FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA. Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." *2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14018. Section 227(c) specifically targets "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). With those goals in mind, the "basis" for the FCC's conclusion becomes abundantly clear: unsolicited text messages invade the privacy and disturb the solitude of their recipients. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th

Cir. 2017). They should therefore be included within the purview of the DNC Registry's protections. The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support. On the contrary, as technology has developed over the years, so too has our understanding of the TCPA's protections. *See 2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14017 ("significant changes in the technologies and [*13] methods used to contact consumers . . . warrant modifications to our existing rules, and adoption of new rules if consumers are to continue to receive the protections that Congress intended to provide when it enacted the TCPA"). It cannot be argued in good faith that text messages are so categorically different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.

On this point, Defendant is without support. The Court concludes that unsolicited text messages sent in violation of the DNC Registry can give rise to a cause of action under § 227(c)(5).

This Court should hold the same.

Defendant's request to exclude text messages from the protections afforded consumers under the TCPA also ignores that "the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013); *see also Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 272 F. Supp. 2d 1365, 1376 (S.D. Ga. 2003) ("I find that § 227 is a remedial statute."). In enacting the TCPA, Congress found that "[u]nrestricted telemarketing….can be an intrusive invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The outcome Defendant requests – allowing companies to spam consumers with unwanted text messages even after requests for the messages to stop – would result in harm that, again, Circuit courts have found is real and concrete. *See Drazen*, 74 F.4th at 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"). Congress intended for the privacy protections of the TCPA to cover new technologies by leaving the term "call" undefined thereby allowing the statute to continue to protect

consumers. This Court should, respectfully, reject Defendant's myopic interpretation of the statute that would render it moot.

II.     **The Plaintiff alleges that the Medvidi sent the Text Messages at Issue. However, if the Court finds to the contrary, the Plaintiff should be permitted leave to Amend to Include an E-mail from the Defendant where it Admits Sending him Text Messages.**

Plaintiff alleges that he received Medvidi's telemarketing texts in 2022 and again in 2024, that his number had long been on the National DNC, and that he never consented or had a business relationship with Medvidi. (Compl. ¶¶ 16–22). These allegations plausibly tie the messages to Medvidi as the sender of the texts. (Compl. ¶¶ 37, 41). Plaintiff alleges he "received multiple telemarketing text messages from the Defendant in 2022 and 2024," and that "Defendant placed calls to telephone number (541) XXX-9999 intending to reach someone other than Plaintiff." (Compl. ¶¶ 20–22, 19). That is a straightforward allegation of direct liability. (Compl. ¶¶ 20–22**).**

This Court can more than plausibly infer that the Defendant is directly liable for the calling conduct described in the complaint on the bases alleged as other courts have done with far less problematic boilerplate motions than those proffered by Defendant's counsel here. *See, e.g.*, *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) (holding sufficient allegations that during the calls the plaintiff was told that he was "speaking with American-Amicable" and allegations that the calls "concerned insurance benefits–American-Amicable's area of business"); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant asserts that "neither message chain references Medvidi by name" and that the threads were "meant to be received by someone other than Plaintiff." Those contentions cannot defeat Plaintiff's well-pleaded attribution. The Complaint alleges that the texts were Medvidi's telemarketing solicitations, period—and attaches exemplar texts ("Some of those texts are below"). (Compl. ¶¶ 20–22). On a 12(b)(6) motion, the Court accepts Plaintiff's characterization and draws reasonable inferences; Defendant's contrary reading of the exhibits or insistence on what the screenshots do or do not show is a factual dispute. Similarly, that a message salutation used a different first name does not break the plausible inference that the sender was Medvidi—especially where the Complaint pleads the messages were Medvidi's solicitations.

Defendant emphasizes that two text threads, 33 months apart, came from different numbers and argues Plaintiff does not allege Medvidi "controls either number." Rule 8 does not require a plaintiff to plead control over specific long/short codes or to attach carrier assignments. What matters is whether the Complaint plausibly alleges the messages were sent by Medvidi or on its behalf to market its services. Plaintiff does so. (Compl. ¶¶ 20–22, 37, 41). Moreover, Plaintiff alleges he texted "STOP" in 2022 and received an acknowledgment, yet further Medvidi marketing texts followed in 2024—facts that plausibly suggest a unified Medvidi campaign operating under common control (or common "on behalf of" authority), not two random, unrelated conversational threads. Defendant's contrary arguments—that the texts did not "name" Medvidi (however, the texts link their website) misstate Rule 8 or raise fact issues inappropriate for resolution on a Rule 12(b)(6) motion.

However, if the Court concludes that Plaintiff's current allegations do not suffice to plead Medvidi's direct liability, dismissal should be with leave to amend. Fed. R. Civ. P. 15(a)(2) directs that courts "should freely give leave when justice so requires," and the Ninth Circuit

- 24 -
OPPOSITION TO MOTION TO DISMISS

applies this policy with "*extreme liberality*." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d

1048, 1051–52 (9th Cir. 2003) (emphasis added) (presumption in favor of amendment; prejudice

is the touchstone). Here, the Plaintiff alleges in his complaint that the Defendant did not deny

making telemarketing calls to the Plaintiff. Compl. ¶ 25. This statement is evidenced in an e-

mail, which the Plaintiff is attaching here. *See* <u>Exhibit 1</u>. Indeed, it also admitted in this e-mail

that the Plaintiff does not have any relationship with the Defendant, yet was sent these texts. So,

to the extent that the Court believes more factual detail is required, leave should be permitted to

include further allegations, including this e-mail.

## CONCLUSION

The motion should be denied. Adopting Defendant's view would carve a texting loophole

through the heart of the DNC regime—inviting telemarketers to do by SMS what Congress and

the FCC barred by phone, rewarding gamesmanship, and draining the registry of its promised

quiet. It would elevate a hyperliteral reading over Congress's express language ("call or

message"), disregard the agency's expert line-drawing, and turn the statute into a museum piece

in the very medium—mobile messaging—where modern intrusion is most acute. The result

would be more unwanted solicitations and a blueprint for evasion that the TCPA was enacted to

foreclose.

Plaintiff also plausibly alleges that Medvidi sent multiple marketing texts to his DNC-

registered number without consent, including after an acknowledged STOP request, which is

enough at Rule 12(b)(6). (Compl. ¶¶19–22, 37, 41). At a minimum, if the Court finds any

pleading deficiency, dismissal should be with leave to amend so Plaintiff can add further

attribution details already identified.

1    DATED this 9th day of September, 2025.

2

3                                    By: */s/ Anthony I. Paronich*
                                         Anthony I. Paronich, *Pro Hac Vice*
4                                        anthony@paronichlaw.com
                                         PARONICH LAW, P.C.
5                                        350 Lincoln Street, Suite 2400
                                         Hingham, Massachusetts 02043
6                                        Telephone: (617) 738-7080
                                         Facsimile: (617) 830-0327
7

8                                        *Attorney for Plaintiff and the putative Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28