– i –

1  Young Choi (SBN: 230645)
   yc@dmcounsel.com
2  **Dental & Medical Counsel, P.C.**
3  1904 Olympic Blvd., Suite 240
   Walnut Creek, CA 94596
4  Tel: (925) 999-8200
   Fax: (925) 884-1725
5
6  Eric P. Knowles, Esq. (*pro hac vice* forthcoming)
   EKnowles@frierlevitt.com
7  Paul S. St. Marie, Jr. (*pro hac vice* forthcoming)
   PStmarie@frierlevitt.com
8  **Frier Levitt, LLC**
   84 Bloomfield Avenue,
9  Pine Brook, NJ 07058
   Tel.: (973) 852-1872
10 Fax (973) 618-0650

11 Attorneys for Defendant, Medvidi, Inc.

12

# UNITED STATES DISTRICT COURT

13

# NORTHERN DISTRICT OF CALIFORNIA

14

15

| | |
|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | CASE No. 5:25-cv-03996-BLF |
| Plaintiff, | **Date: January 22, 2025**<br>**Time: 9:00 a.m.**<br>**Courtroom 1, Fifth Floor**<br>**Hon. Beth Labson Freeman** |
| v. | |
| MEDVIDI INC., | |
| Defendant. | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT .................................................................................................................................. 1

   I.   The Second Amended Complaint Fails to Satisfty the Pleading Requirements ........... 1

      A.   Defendant's *De Minimus* Addition of Allegations to Its Second Amended Complaint Do Not Raise Its Claims Over the Plausibility Standard ................................ 2

      B.   Plaintiff's Reliance on Defendant's E-Mail to Plaintiff's Counsel Should Be Awarded Zero Weight Where Plaintiff Overstates the Breadth of the Alleged Admission and Improperly Relies on the E-mail in Violation of FRE 408 ......................................... 6

      C.   Alternatively, the Court should Dismiss with Prejudice Alleged Communications From 2024 ............................................................................................................................. 9

CONCLUSION ............................................................................................................................. 10

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SAC**

# TABLE OF AUTHORITIES

**Cases**

*Abboud v. Circle K Stores, Inc.*,
731 F. Supp. 3d 1094 (D. Ariz. 2024)……………………………………………………..4

*McCrary v. Elations Co., LLC*,
2013 U.S. Dist. LEXIS 173592 (C.D. Cal. July 12, 2013)……………………………………..6

*Ragsdale v. Leadpoint, Inc.*,
2024 U.S. Dist. LEXIS (C.D. Cal. Nov. 5, 2024)……………………………………………...4

*Saddozai v. Lomu*,
2020 U.S. Dist. LEXIS 140975 (N.D. Cal. Aug. 5, 2020)……………………………………10

*Scofield v. Alleviate Tax LLC*,
No. 1:24-cv-03221-DDD-KAS No. 42 (D. Colo. Sept. 18, 2025)…………………………….3

**Rules**

Fed. R. Civ. P. 12(f)……………………………………………………………………………..6

Fed. R. Evid. 408………………………………………………………………………………6-8

Defendant, Medvidi, Inc. ("Medvidi" or "Defendant") submits this Reply in further support of its Motion to Dismiss the Second Amended Complaint ("SAC"). Based on the arguments contained herein as well as Defendant's Opening Brief ("Motion", *see* Dkt. 34), the Court should grant Defendant's Motion and dismiss Plaintiff's SAC with prejudice. Alternatively, the Court should dismiss all allegations against Defendant predicated on text messages Plaintiff received after 2022.

## ARGUMENT

### I. THE SECOND AMENDED COMPLAINT FAILS TO SATISFTY THE PLEADING REQUIREMENTS

This Court should grant Defendant's Motion with prejudice where neither Plaintiff's minimal additions to its operative pleading nor argument made in Opposition to the Motion elevated Plaintiff's allegations above the operative pleading standard.

First, Plaintiff's statement that the hyperlinks "lead to the Medvidi website" (SAC ¶ 25) is wholly conclusory, does not constitute a well-pleaded allegation sufficient to state a claim, and merely emphasizes Plaintiff's minimal pre-suit investigation into its alleged claims.

Second, Plaintiff's reliance on Defendant's pre-suit e-mail to Plaintiff's counsel as an admission of liability overstates the breadth of the e-mail as Defendant never admitted to sending any communication at issue, and, even if the e-mail may be construed as an admission, Plaintiff's reliance on the e-mail to demonstrate the validity of its claims is inadmissible where the communication itself is a "compromise negotiation" under FRE 408.

And third, even if the Court finds Plaintiff's minimal amendment to its pleading is sufficient to state a claim, the Court should find that Plaintiff has only stated a claim with respect to text messages received in 2022 from a number ending in "0848" where the only factual support furnished by Plaintiff to tie Defendant directly to any of these communications

is limited to the "ezcareclinic" screenshot included for the first time in Plaintiff's Opposition. *See* Opp. at 11. Accordingly the Court should strike the SAC's allegations concerning text messages from 2024 and dismiss with prejudice any claims based on those communications.

For the reasons stated herein, the Court should grant Defendant's Motion to dismiss the SAC with prejudice, or, in the alternative, strike all allegations concerning messages other than those received after 2022 and dismiss with prejudice all claims predicated on those post-2022 communications.

### A. **Defendant's *De Minimus* Addition of Allegations to Its Second Amended Complaint Do Not Raise Its Claims Over the Plausibility Standard**

The Court should grant Defendant's Motion to dismiss the Complaint in its entirety where the barebones amended allegations to the SAC fail to cure the factual deficiencies present in Plaintiff's initial complaint.

When granting Plaintiff leave to amend following dismissal of Plaintiff's initial complaint, the Court advised Plaintiff to provide factual allegations:

> "[c]oncerning the ***circumstances in which the text messages were sent and the identified of any third parties*** may be sufficient to state a claim for relief under the TCPA and would assist the parties in clarifying the legal issues in this case."

*See* Dkt. 28 at 7. Despite these instructions, comparing the allegations set forth in the Initial Complaint to those added in amendment, Plaintiff added only three new statements – two of which merely expand on Plaintiff's allegation in the initial complaint that "Defendant did not deny making telemarking calls to the Plaintiff." Specifically, new allegations include:

> 25. The links in these text messages lead to the Medvidi website, which supports that the Defendant itself sent the text messages.
>
> 26. In a February 3, 2025 email to Plaintiff's counsel, Mevdidi's Chief Operating Officer, Oleg Gorbylev, acknowledged that the cellular

telephone number ending in 9999 – the number assigned to Plaintiff – was "associated with a different individual" in their system.

27.     In that same correspondence, Medvidi admitted that it had sent prior messages to Plaintiff's number.

See SAC ¶¶ 25-27.[1]

Plaintiff argues in its opposition that Paragraphs 22-25 of the SAC are "precisely the factual enhancement the Court envisioned." This cannot be true. First, paragraphs 22-24 of the SAC are identical to Paragraphs 22-24 of the initial complaint, meaning none of those allegations enhanced the SAC. Second, paragraph 25 of the SAC – which Plaintiff implicitly claims is sufficient to allege Defendant's ownership of each and every hyperlink across more than 10 text messages spanning a multi-year period – offers mere conclusions as to Defendant's ownership of the hyperlinks without a single well-pleaded fact supporting that assertion.

Furthermore, Plaintiff's statement that Defendant "advances the same faulty legal standard as the defendant in *Scofield*" is misplaced where the Plaintiff's own citation to *Scofield* demonstrates that the plaintiff in *Scofield* spoke to a human being that specifically identified the defendant by name. *See* Opp. at 6; s*ee also Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03221-DDD-KAS No. 42 (D. Colo. Sept. 18, 2025) ("The complaint alleges that Mr. Scofield received a call and a resulting voicemail that urged him to call a number, and that the person who answered that number identified 'his company' as Alleviate"). Here, the facts are distinguishable where none of the text messages identify Medvidi by name and Plaintiff's only statement in the SAC as to the relationship between the messages received and the Defendant is Plaintiff's conclusion that "the links…lead to the Medvidi website" without a single detail demonstrating how Plaintiff reached such a conclusion where there is more than ten hyperlinks

---

[1] The failure of paragraphs 26 and 27 to state a claim are discussed herein at § I.B.

across two distinct text message threads that originated from separate telephone numbers. This is not the same situation as *Scofield* and demonstrates precisely why Plaintiff's allegations fail.

Additionally, case law cited in the Opposition likewise mischaracterizes the situation here. For example, in *Abboud v. Circle K Stores, Inc.*, the factual allegations related to the defendant's ownership over the hyperlinks in question contained specific allegations that "clicking the link in the second and third messages 'takes the recipient to Defendant's website, https://www.circlek.com/.'" 731 F. Supp. 3d 1094 at 1098 (D. Ariz. 2024). No such allegation that Plaintiff determined Defendant owned the hyperlinks in question by navigating specific hyperlinks across the two distinct text message chains is alleged in the SAC. Further still, additional factual allegations in *Abboud* that elevated those claims over the plausibility threshold included direct quotations from the text messages that identified "CircleK" by name, yet these critical pieces of information sufficient to draw the connection between Defendant and the hyperlinks at issue are simply absent from the SAC. *See id.*

As another example, Plaintiff's reliance on *Ragsdale v. Leadpoint, Inc.* is also misplaced. 2024 U.S. Dist. LEXIS 202327 at *5-6 (C.D. Cal. Nov. 5, 2024). In *Ragsdale*, the plaintiff received text messages from mortgage brokers doing business under name that was different than the defendant, Leadpoint, Inc. *See id.* However, the plaintiff in *Ragsdale* was able to adequately plead that Leadpoint, Inc. was the party responsible for sending the communications at issue because it was specifically alleged that once the plaintiff navigated to the website of the non-party mortgage brokers, each entity's website "listed [Leadpoint, Inc.] as its owner and list[ed] [Leadpoint, Inc.'s] National Mortgage Licensing System number." *Id.* Again, the SAC here contains no analogous allegations in the SAC to those relied upon in *Ragsdale* that would demonstrate a connection between the hyperlinks at issue and the

Defendant. Resultantly, Plaintiff's characterization of the allegations pled in *Ragsdale* as similarly barebones to the allegations pled in the SAC here simply miss the mark. *See* Opp. at 5. Where the Court in *Ragsdale* was able to specifically trace the identity of the defendant through statements contained within the relevant hyperlinks, the Plaintiff here just presume such connective tissue between the hyperlinks and the Defendant exists without ever staying how or why.

Stated differently, case law cited by Plaintiff demonstrates exactly why Plaintiff's SAC fails to state a claim. Where other cases have concrete allegations as to the mechanism by which a plaintiff connected a defendant to the hyperlinks at issue, the SAC here does not allege that Plaintiff investigated Defendant's ownership of any relevant domain names, clicked on any of the hyperlinks, preserved any screen shots from those hyperlinks[2], or otherwise uncovered a single concrete, technical fact about where the links go and who controls them. And as alluded to in the Opening Brief, Plaintiff's imprecise investigation into its claims against Defendant was highlighted through Plaintiff's filing of its FAC that accused Defendant of sending multiple other text messages to Plaintiff after the filing of this action that were so incontrovertibly sent by an entirely different entity – i.e. **Medvi** – that Plaintiff was forced to file the SAC that all but identically mirrors the initial Complaint in this matter that this Court already dismissed. *See* Dkt. 34 at 2-3 and 13-14.

Accordingly, Plaintiff failed to cure the factual deficiencies in its initial Complaint and the Court should grant Defendant's Motion to Dismiss the SAC in its entirety with prejudice.

---

[2] The one exception being the entirely unsupported statement in the Opposition that Plaintiff clicked on one of the links embedded in the messages from 2022 that directed Plaintiff to Defendant's website – information that Plaintiff should and, most likely would, have included in either its First or Second Amended Complaint if it existed prior to the filing of this lawsuit. *See* Opp. at 11.

B. **Plaintiff's Reliance on Defendant's E-Mail to Plaintiff's Counsel Should Be Awarded Zero Weight Where Plaintiff Overstates the Breadth of the Alleged Admission and Improperly Relies on the E-mail in Violation of FRE 408**

The Court should also grant Defendant's Motion to dismiss with prejudice where Plaintiff overstates the breadth and scope of the alleged admission by Defendant such that Defendant's statement is insufficiently specific to state a claim that Defendant sent Plaintiff each message identified in the SAC. *See* SAC ¶ 24. However, even if deemed an admission as broad as alleged, Defendant's statement is inadmissible to validate Plaintiff's claims as it was made in the context of a pre-suit "compromising negotiation" under FRE 408.[3]

The alleged admission does little to show that Defendant sent any of the text messages cited in the SAC. *See* Declaration of Paul St. Marie, Jr., Esq. ("St. Marie Decl.") at ¶¶ 4-5, Ex. A (Defendant's e-mail to Plaintiff's counsel); *see also* Dkt. 26 at 24 (Plaintiff citing Exhibit A in Opposition to prior Motion to Dismiss and stating "to the extent the Court believes more factual detail is required, leave should be permitted to include further allegations, including this e-mail). The e-mail, which Plaintiff *did not* include in its SAC, states, in relevant part:

> Upon reviewing our records, we have determined that the phone number ([XXX-XXX-XXXX]) is associated with a different individual who provided express written consent to receive communications from us and has received services from MEDvidi. This individual voluntarily opted into receiving messages, which were sent in accordance with applicable laws and regulations, including the Telephone Consumer Protection Act (TCPA).

---

[3] It bears noting that the Court has independent discretion pursuant to FRCP 12(f) to strike allegations that otherwise violate the Rules of Evidence, specifically with respect to settlement negotiations under FRE 408. See *McCrary v. Elations Co., LLC*, 2013 U.S. Dist. LEXIS 173592, at *5 (C.D. Cal. July 12, 2013) (granting the defendant's motion to strike allegations in the plaintiff's second amended complaint that contained information about offers to compromise and statements in pursuit of settlement .noting "numerous [c]ourts have used Rule 12(f) to strike allegations from complaints that detail settlement negotiations within the ambit of Rule 408").

*See* St. Marie Decl., ¶ 2, Ex. A.

Plaintiff relies on this statement to show Defendant admitted to the essential elements of each of Plaintiff's claims with respect to each message across both text chains. *See* SAC ¶¶ 26-27. This communication is not nearly that broad so as to support a finding that Defendant admitted to sending each message. The e-mail provided no time frame during which Defendant stated it sent messages to a number provided to them by their own consenting patient. *See* Ex. A. The e-mail also does not identify what telephone(s) number Defendant used to contact its consenting patient, an approximate number of messages sent to its consenting patient, whether any of the hyperlinks received by Plaintiff were owned by Defendant, or whether any messages were sent to the patient's number after receiving any "STOP" notification. *See id.*

If the Court accepts Plaintiff's broad interpretation of Defendant's e-mail, Plaintiff could use such reading to state a claim for any text message Plaintiff receives from unknown numbers that operate in roughly the same business as Defendant. In fact, Plaintiff tried exactly this when filing its FAC, and it is precisely what Plaintiff is seeking to do now. *See* FAC ¶¶ 29-33 and 39. Plaintiff should not be permitted to broadly interpret Defendant's statement where, at its core, the message fails to relay any information on the specifics of any communication that Defendant sent to a number provided by one of their patients.

More importantly, the communication itself should be inadmissible pursuant to FRE 408, which prohibits the use of another party's "furnishing, promising, or offering…a valuable consideration in compromising or attempting to compromise the claim" or a party's "conduct or a statement made during compromise negotiations about the claim" in order to "prove…the validity or amount of a disputed claim." *See* FRE 408(a)(1-2). Here, the communication satisfies the requirements to constitute an inadmissible communication under FRE 408.

At the outset, Plaintiff undoubtedly uses Defendant's statements to support the validity of its claims where it relies on the statement to form the basis that Defendant was the entity that sent the alleged messages to Plaintiff. Furthermore, the communication qualifies as an offer to compromise under FRE 408 as the communication set forth Defendant's position as to why it did not violate the TCPA and offered to place Plaintiff's telephone number on Defendant's own internal Do-Not-Call list. *See* St. Marie Decl., ¶ 4, Ex. A ("If [Plaintiff] wished to ensure that no further messages are received at this number, [Defendant] will gladly add it to our internal Do-Not-Call list upon verification of [Plaintiff's] identity,"); *see also id.* ("[Defendant] has not violated the TCPA in this instance"); *and see McCrary*, 2013 U.S. Dist. LEXIS 173592 at *14-15 (C.D. Cal. July 12, 2013) (finding inadmissible pre-suit discussions between the parties under FRE 408). In *McCrary*, the court found that the defendant made an offer to compromise under FRE 408 where pre-litigation letters between the parties identified Defendant's position why it did not violate the statute and offered to repair the alleged wrongdoing or reimburse the plaintiff, both of which satisfied the "attempt to comply" requirement to qualify as a compromise negotiation as used in FRE 408. *See id.* at *14-15. The same should be true here.

Lastly, while FRE 408 is limited to the extent that conduct or statements that would otherwise be inadmissible may be admitted "for another purpose, such as proving a witness's bias or prejudice [and] negating a contention of undue delay," no such exception exists here. *See* FRE 408(b). As previously stated, Plaintiff certainly uses Defendant's statement to demonstrate the claims validity and no permissible use of the statement has been proffered by Plaintiff. Since Plaintiff, for example, has no allegations related to messages being sent by Defendant after the parties exchanged e-mail communications, Plaintiff does not have any

purpose for relying on the compromise negotiation between the Parties other than the inadmissible use of demonstrating the validity of Plaintiff's asserted claims. Accordingly, the Court should strike from the record Paragraphs 26 and 27 of the SAC as an inadmissible use of protected communications under FRE 408.

For each of the foregoing reasons in this section, the Court should grant Defendant's Motion to Dismiss as Plaintiff failed to demonstrate that Defendant's e-mail is either admissible or sufficient to state a claim.

### C. Alternatively, the Court should Dismiss with Prejudice Alleged Communications From 2024

Alternatively, even if the Court otherwise accepts Plaintiff's arguments in its Opposition, the Court should nonetheless partially grant Defendant's Motion with respect to the alleged communication in 2024 as there are no factual allegations supporting the claim that Defendant had direction or control over the transmission of those messages.

Plaintiff has not, and cannot, allege any factual allegations even remotely suggesting that the text messages received from a number ending in 3415 during 2024 are attributable to Defendant. Here, it is evident on the face of the alleged communications that they originate from two distinct telephone numbers where none of the hyperlinks across the two sets of text messages look remotely similar. It is equally evident that the text messages are intended to contact two distinct individuals – Riki and Keri. Further still, despite taking issue with Defendant's focusing on the need to adequately demonstrate how Plaintiff determined that *both distinct text message chains* contained hyperlinks owned or controlled by Defendant, the Opposition's argument in support of further leave to amend includes a single screen shot allegedly captured by Plaintiff for "ezcareclinic.com" – a hyperlink exclusive to the 2022 text messages. *See* Opp. at 11; *see also* FAC ¶ 24. Accordingly, even if the Court were to accept

Plaintiff's proposed amendments to a hypothetical Third Amended Complaint, those allegations would do nothing to state a claim for any of the 2024 text messages. Plaintiff had multiple prior opportunities to amend and, with respect to at least the 2024 text conversation, the Opposition was unable to demonstrate how further amendment would not be futile. *See Saddozai v. Lomu*, 2020 U.S. Dist. LEXIS 140975, *8 (N.D. Cal. Aug. 5, 2020) (denying leave to amend as futile where "Plaintiff was made aware of the standard to state a…claim in the Court's initial order dismissing his original complaint" and "Plaintiff provide[d] no explanation as to why he did not attempt to allege sufficient facts to state a claim against [Defendant] in his first amended complaint,").

In light of the Plaintiff's continued shortfalls in stating a claim against Defendant, the Court should, at a minimum, strike from the SAC any allegations related to the 2024 text messages, dismiss with prejudice any claims based on those 2024 messages, and deny Plaintiff further leave to amend its remaining allegations.

### **CONCLUSION**

For the foregoing reasons, Defendant, Medvidi, Inc., respectfully requests that the Court grant Medvidi's Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim in its entirety with prejudice.

Alternatively, for the foregoing reasons outlined in § I.C., the Court should grant-in-part Defendant's Motion to dismiss with respect to all alleged communications other than those received by Plaintiff in 2022 from the number ending in 0848 in lieu of granting Plaintiff leave to be an otherwise futile Third Amendment Complaint.

|   |   |
|---|---|
|   | **FRIER LEVITT, LLC** |
|   | */s/ Paul S. St. Marie, Jr., Esq.* |
|   | Paul S. St. Marie, Jr. (admitted *pro hac vice*) |
|   | Eric P. Knowles, Esq. (admitted *pro hac vice*) |
|   | **FRIER LEVITT, LLC** |
|   | 84 Bloomfield Avenue |
|   | Pine Brook, NJ 07058 |
|   | Tel. (973) 618-1660 |
|   | Fax (973) 618-0650 |
|   |   |
|   | **Dental & Medical Counsel, P.C.** |
|   | Young Choi (SBN: 230645) |
|   | yc@dmcounsel.com |
|   | **Dental & Medical Counsel, P.C.** |
|   | 1904 Olympic Blvd., Suite 240 |
|   | Walnut Creek, CA 94596 |
|   | Tel: (925) 999-8200 |
|   | Fax: (925) 884-1725 |
| Dated: November 20, 2025 | Attorneys for Defendant, Medvidi, Inc. |